**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MIKE SILVO**                                                    **CIVIL ACTION**

**versus**                                                         **NO. 05-6362**

**WARDEN BURL CAIN**                                               **SECTION "C"**

<u>**ORDER AND REASONS**</u>

Before the court is a petition for habeas corpus relief filed by Mike Silvo

("Petitioner") pursuant to 28 U.S.C. § 2254.  Petitioner is presently incarcerated at the

Louisiana State Penitentiary at Angola.  On October 29, 1998, Petitioner was convicted

after a jury trial of two counts of armed robbery pursuant to La.R.S. 14:64.  He was

subsequently sentenced as a third offender under Louisiana's Habitual Offender Statute

to life in prison without the benefit of probation, parole, or suspension of sentence.  As

grounds for relief, Petitioner claims that he received ineffective assistance of counsel for

four separate reasons detailed in his petition.

The State argues that Petitioner's habeas petition is untimely.  The Court finds

that the petition is time barred.  The Court also concludes that even if equitable tolling

applied, the Petitioner's substantive claims are without merit, and the petition is therefore

**DENIED**.


<u>Timeliness</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires

that a petitioner bring his Section 2254 claims within one year of the date on which his

conviction or sentence became final.[1]  AEDPA's one-year statute of limitations is tolled

for the period of time during which a properly filed application for state post-conviction

relief or other collateral review attacking a conviction or sentence is pending in state

court.  <u>See</u> <u>Fields v. Johnson</u>, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). "'[A]

properly filed application is one submitted according to the state's procedural

---

[1] 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of *habeas corpus*
> by a person in custody pursuant to the judgment of a State court.  The limitation period
> shall run from the latest of –
>> (A) the date on which the judgment became final by the conclusion
>> of direct review or the expiration of the time for seeking such
>> review;
>> (B) the date on which the impediment to filing an application
>> created by State action in violation of the Constitution or laws of the
>> United States is removed,  if the applicant was prevented from filing
>> by such State action;
>> (C) the date on which the constitutional right asserted was initially
>> recognized by the Supreme Court, if the right has been newly
>> recognized by the Supreme Court and made retroactively applicable
>> to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims
>> presented could have been discovered through the exercise of due
>> diligence.
> (2) The time during which a properly filed application for State post-conviction or other
> collateral review with respect to the pertinent judgment or claim is pending shall not be
> counted toward any period of limitation under this subsection.

requirements, such as the rules governing notice and the time and place of filing."
Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999) (quoting Lovasz v. Vaughn, 134
F.3d 146, 148 (3d Cir. 1998)); Williams v. Cain, 217 F.3d 303 (5th Cir. 2000).  As noted
by the Fifth Circuit, "Under the plain language of the statute, any time that passed
between the time that [Petitioner's] conviction became final and the time that his state
application for habeas corpus was properly filed must be counted against the one year
period of limitation."  Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir.1998).

On October 29, 1998, after a trial by jury, Petitioner was convicted of two counts
of armed robbery under La. R.S. 14:64.  He was initially sentenced on January 5, 1999 to
ninety-nine years on each count, the sentences set to run concurrently.  On January 15,
1999, Petitioner filed his direct appeal in the Louisiana First Circuit Court of Appeal.  On
July 1, 1999, while his appeal was pending, Petitioner was sentenced to life
imprisonment after a multiple bill hearing wherein Petitioner was adjudicated a third
offender under La.R.S. 15:529.1.  (State rec. vol. 1 of 4).  The First Circuit Court of
Appeal denied Petitioner's direct appeal in a written opinion issued on May 12, 2000.
(State rec. vol. 4 of 4).  Petitioner appealed the First Circuit's decision to the Louisiana
Supreme Court, which denied his appeal on March 30, 2001.  (Id.).  Petitioner's
conviction thus became "final" for purposes of AEDPA's statute of limitations on June
28, 2001, ninety days after the Louisiana Supreme Court rendered its judgment on March
30, 2001.[2]

---

[2] The Supreme Court, in Clay v. United States, 537 U.S. 522, 527 (2003), noted that "finality attaches when
this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or
when the time for filing a certiorari petition expires."  See also Roberts v. Cockrell, 319 F.3d 690, 694 (5th
Cir. 2003).  A defendant has ninety days to petition for writ of certiorari in the United States Supreme Court
after a decision is rendered by the state's highest court.  SUP. CT. R. 13(1). Since Petitioner filed no petition
for writ of certiorari in the United States Supreme Court in this case, his conviction became final when the
time he had to do so expired.

AEDPA's statute of limitations began to run on June 29, 2001.  Without any tolling, AEDPA's one-year statute of limitations would have expired on June 29, 2002. Petitioner did not file his application for state post-conviction relief until March 28, 2003, (State rec. vol. 4 of 4), and the instant habeas petition was not filed until October 4, 2005. Thus, his federal habeas petition would be long overdue were there no basis to toll the statute of limitations.  The Petitioner argues for equitable tolling based on what the state court judge said regarding the amount of time he had to file his habeas petition.

In Davis v. Johnson, the Fifth Circuit held that AEDPA's one-year limitation period is a statute of limitations rather than a jurisdictional bar and, as such, is subject to equitable tolling.  158 F.3d 806, 811 (5th Cir. 1998).  The doctrine exists to preserve a plaintiff's claim "when strict application of the statute of limitations would be inequitable."  Id. at 810.  Drawing in part from equitable principles established in non-AEPDA cases, the Fifth Circuit noted that, "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."  United States v. Patterson 211 F.3d 927, 930 (5th Cir. 2000) (quoting Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996)).  In evaluating equitable tolling claims, courts are to "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling."  Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999).

In this case, Petitioner was told by the trial judge at sentencing that, pursuant to the Louisiana Code of Criminal Procedure, "you have three years in which to file *any and all* petitions for post-conviction relief."  (State rec. vol. 3 of 4).  While technically true as

1

a matter of Louisiana law, the trial court's statement was so broadly worded as to be easily construed as referring to all forms of post-conviction remedies, including federal habeas relief.  It is easy to see how a *pro se* Petitioner like Mr. Silvo could have been misled by the trial court's comments into believing that it was cost-free to wait as long as he did to file his application for state post-conviction relief.  Additionally, the doctrine of equitable tolling is intended to be reserved for prisoners who diligently pursue their post-conviction rights.  See Coleman v. Johnson, 184 F.3d 398 (5th Cir. 1999) ("In order for equitable tolling to apply, the applicant must diligently pursue his § 2254 relief.").  Petitioner wasted little time in filing his federal habeas petition after his state remedies were exhausted.  He appears to have diligently pursued his rights, observing all procedural requirements as he understood them.  However, even assuming equitable tolling is appropriate, the Petitioner's claims lack substantive merit, as set forth later in this opinion.

### Exhaustion

Petitioner has exhausted available state remedies as required by AEDPA.  Under AEDPA, a petitioner must first exhaust his remedies in state court before seeking habeas relief from the federal courts.  § 2254(b)(1)(A).  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).  Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal habeas petition were previously presented to the state's highest court in a procedurally proper

manner according to state court rules.  <u>Dupuy v. Butler</u>, 837 F.2d 699, 702 (5th Cir. 1988).

Petitioner presents four claims for review in his federal habeas petition, each of which was urged in his application for post-conviction relief, which was appealed all the way up to the Louisiana Supreme Court.  Petitioner has therefore satisfied AEDPA's exhaustion requirement.

<u>Standard of Review</u>

AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed question of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

Regarding questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of

> the latter inquiry is on whether the state court's application of clearly
> established federal law is objectively unreasonable, and . . . an
> unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

First Claim: Ineffective assistance of counsel – General Failure to Investigate and Conduct Trial Properly

Petitioner's first ineffective assistance of counsel claim alleges that his trial counsel failed to conduct adequate pre-trial investigation and generally failed to subject the State's case to meaningful adversarial testing.  (Rec. Doc. 1, p. 7).  Petitioner's claim is quite broadly worded and could be interpreted by the Court in any one of three distinct ways.  First, Petitioner could be claiming a general *failure to investigate* and interview particular witnesses that may have been helpful to Petitioner's case.  Second, Petitioner's argument could be construed as a *failure to call particular witnesses*.  Such a reading is most consistent with how the claim was asserted in Petitioner's post-conviction application at the state level.  (State rec. vol. 4 of 4). Finally, Petitioner could be arguing a general inadequacy on his attorney's part in trying the case itself.  Each interpretation mandates a slightly different analysis by the Court.  However, under any of the three interpretations, Petitioner's claim is without merit.

To prevail on an ineffective assistance of counsel claim, Petitioner must satisfy each prong of the following two-part test established in Strickland:

> First, petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687.

Failure to satisfy either the performance or the prejudice prong is fatal to a petitioner's claim. Id.

Under Strickland's performance prong, Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness, with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992) (quoting Strickland, 466 U.S. at 688). Because there are countless ways to provide effective representation, "judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).

To show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a

probability sufficient to undermine confidence in the outcome." *Id.*  In making the

prejudice determination, courts must review the record to determine "the relative role that

the alleged trial errors played in the total context of [the] trial."  Crockett v. McCotter,

796 F.2d 787, 793 (5th Cir.1986).

   The Court in Strickland itself, along with subsequent courts evaluating ineffective

assistance of counsel claims, specifically highlights the importance of the defense

attorney's duty to investigate.  See Strickland, 466 U.S. at 691 ("[C]ounsel has a duty to

make reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary."); Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir. 1985)("A

substantial body of Fifth Circuit case law insists . . . that effective counsel conduct a

reasonable amount of pretrial investigation.") (internal quotations omitted); Bryant v.

Scott, 28 F.3d 1411 (5th Cir. 1994)("[A]n attorney must engage in a reasonable amount of

pretrial investigation and at a minimum, . . . interview potential witnesses and . . . make

an independent investigation of the facts and circumstances in the case.") (quoting Nealy,

764 F.2d at 1177)).  The American Bar Association Standards for Criminal Justice,

expressly mentioned by the Court in Strickland as a permissible guide for measuring

reasonableness, Strickland, 466 U.S. at 688, notes, "Defense counsel should conduct a

prompt investigation of the circumstances of the case and explore all avenues leading to

facts relevant to the merits of the case and penalty in the event of conviction."

STANDARDS FOR CRIMINAL JUSTICE § 4-4.1 (1991).

   The Strickland Court makes clear that strategic choices "made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable."

Strickland, 466 U.S. at 690.  In particular, decisions by attorneys about whether or not to

call a witness to testify have been treated by courts as clear questions of trial strategy to which courts owe great deference.  The Fifth Circuit has noted that "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative."  United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).

To the extent Petitioner's first ineffective assistance of counsel claim alleges a failure to investigate, Petitioner simply has not put forth any evidence in his petition of witnesses that should have been – but were not – interviewed.  Instead, he merely asserts in vague terms, "corroborating witnesses and evidence favorable to defendant were never investigated." (Rec. Doc. 1, p. 7).  Such unsupported allegations are insufficient for the Court to find that Petitioner carried his burden of demonstrating ineffective assistance.  See, e.g., Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

If Petitioner's claim is interpreted as a failure to call particular witnesses[3] to testify, as opposed to a failure to investigate, he faces more of an uphill doctrinal battle.  As noted, "complaints of uncalled witnesses are not favored" in this circuit.  Cockrell, 720 F.2d at 1427.  Moreover, the state court has already ruled on this particular claim, finding appropriately, "This court does not question the trial strategy of defense counsel

---

[3] Again, Petitioner fails to specify to which witnesses he is referring.  However, in the spirit of reading a *pro se* litigant's papers with appropriate benevolence, "however inartfully [they are] pleaded," Haines v. Kerner, 404 U.S. 519 (1972), the Court reads this claim as if Petitioner incorporated the arguments he made on the identical claim in his application for state post-conviction relief.  There, Petitioner listed six potential witnesses that he claims should have been subpoenad for trial.  (State rec. vol. 4 of 4).  The Court assumes Petitioner is referring to those same witnesses here.

in declining to have six persons who allegedly told law enforcement officers that the petitioner was the perpetrator...."  (State rec. vol. 4 of 4).  Because the issue of counsel's alleged deficiency is a mixed question of law and fact, this Court may only upset the state court's determination if it was "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The state court properly applied the Strickland test in this instance, and Petitioner's claim that his lawyer was ineffective for failing to call particular witnesses to testify is without merit.

Finally, if the Court reads Petitioner's argument here as a general complaint about his lawyer's performance at trial, the Court disagrees with Petitioner's assessment that his counsel was constitutionally ineffective at trial.  Having thoroughly reviewed the trial transcript, the Court finds Petitioner's lawyer subjected the State's formidable case to meaningful adversarial testing.  Petitioner's broadly worded allegation that "counsel's incompetence precluded jury from independently judging merits of the case. . ." (Rec. Doc. 1, p. 7) fails to satisfy either the performance or prejudice prong of Strickland.  This claim is **DENIED.**

Second and Third claim: Ineffective Assistance of Counsel – Introduction of "Other Crimes" Evidence and Evidence of Multiple Aliases[4]

Petitioner contends his lawyer inappropriately elicited testimony from two witnesses containing evidence of uncharged "other crimes."  He further contends that the government's use of his multiple aliases during trial – and his attorney's failure to object to such use – prejudiced him in the eyes of the jury.  With regard to the "other crimes"

---

[4] The Court considers these claims simultaneously because the analysis regarding whether or not Petitioner was sufficiently prejudiced is the same.

evidence, Petitioner refers specifically to the cross-examination of Officers Donald Pierce and Katherine Barton.  In each officer's testimony, defense counsel asked about a particular gun which turned up stolen from Missouri, not from the pawn shop in Texas that Petitioner was charged with robbing.  Petitioner contends the implication that he stole other guns in addition to the ones he was charged with stealing in this case unfairly prejudiced the jury in his case.  The Court is not persuaded that Petitioner has met his burden of showing sufficient prejudice under the Strickland test to prevail on these claims.

        As noted, to meet the prejudice prong of the Strickland, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In analyzing potential prejudice, courts examine the relative strength of the state's case against the defendant to determine the relative impact of a particular piece of improperly admitted evidence.  See, e.g., Anderson v. Johnson, 338 F.3d 382, 393-94 (5th Cir.2003).  In this case, the evidence against Petitioner was overwhelming, including physical evidence of the stolen goods found in Petitioner's possession at the time of arrest, numerous convincing identifications, and damaging inculpatory statements by the Petitioner himself.  With this in mind, the Court finds that it cannot be said that but for the introduction of the "other crimes" evidence or aliases, the result of the proceeding would have been different.  This claim is **DENIED**.


Fourth Claim: Ineffective Assistance of Counsel – Failure to Communicate Prior to Trial

In his final ineffective assistance of counsel claim, Petitioner contends his lawyer spent an insufficient amount of time communicating with Petitioner prior to trial. He claims his lawyer spent ten minutes discussing the case with him in a conversation that took place two weeks prior to trial. If Petitioner's characterization of his lawyer's efforts is correct, the Court agrees that defense counsel's efforts are disappointing at least, if not constitutionally deficient. However, Petitioner's claim once again falters on <u>Strickland</u>'s prejudice prong.

In his federal habeas petition, Petitioner fails to articulate any concrete difference that more discussions with his attorney would have made at trial. Instead, he lobs vague assertions such as "any advice defendant might have been able to offer his attorney to prepare a just defense were lost." (Rec. Doc. 1, p. 10). Such bald allegations are inadequate to meet the burden of demonstrating prejudice under <u>Strickland.</u> Even were the Court to read into Petitioner's federal habeas claims the relatively more specific claims made in support of this point in his state post-conviction application, the claim still falls short of satisfying <u>Strickland.</u> In his state post-conviction application, Petitioner indicates that further communication with his attorney might have resulted in the testimony of a number of exculpatory witnesses. Petitioner's claim therefore boils down to a "failure to call witness" argument. The state court specifically considered this claim and held that "petitioner fails to show how he was prejudiced by the failure to have these witnesses and himself testify at trial." (State rec. vol. 4 of 4). Especially in light of this circuit's overall skepticism towards "failure to call witness" claims, the Court cannot say that the state court's determination "was contrary to, or involved an unreasonable

application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).  This claim is **DENIED.**

<u>Conclusion</u>

Petitioner's claims are timely, exhausted, and not procedurally barred.  However,

the Court finds that each assignment of error fails on the merits.

Accordingly,

**IT IS ORDERED** that Mike Silvo's petition for habeas corpus is **DENIED.**

New Orleans, Louisiana, this 11th day of August, 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE